# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3485-17T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

A.M.P. and K.S.,

     Defendants,

and

M.T.J.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.S.P.,
J.M.J. and J.D.J., minors.

_____

Submitted November 1, 2018 – Decided  December 5, 2018

Before Judges O'Connor and DeAlmeida.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Cape May County, Docket No. FG-05-0020-16.

Joseph E. Krakora, Public Defender, attorney for appellant (Sarah Chambers, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Jennifer Russo-Belles, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors A.S.P., J.M.J. and J.D.J. (Meredith Alexis Pollock, Assistant Deputy Public Defender, of counsel; Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant M.T.J.[1] (father or defendant) appeals from a March 20, 2018 judgment terminating his parental rights to his twin sons, J.M.J. and J.D.J. (twins), presently four years of age. The twins' mother, A.P., also lost her parental rights to the twins, as well as to another child, A.S.P., in this judgment, but she did not appeal from it.[2]

---

[1] We use initials to protect the parties' and their family members' identities.

[2] M.T.J. is not the biological father of A.S.P.

On appeal, the father contends the Division of Child Protection and Permanency (Division) failed to prove by clear and convincing evidence the four-prong standard set forth in N.J.S.A. 30:4C-15.1(a).[3]  After reviewing the record and applicable legal principles, we reject the father's contentions and affirm substantially for the reasons expressed by the trial court in its written opinion.  In lieu of reciting at length the evidence adduced during the trial, we

---

[3]  These four prongs are:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

3

incorporate by reference the trial court's findings on the material facts because they are supported by competent evidence. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012). Nonetheless, we note some of the key evidence.

At the time of trial, the father was thirty years of age. During a psychological evaluation, he admitted to having previously engaged in various criminal activities and was arrested numerous times. By the time of trial, he had been incarcerated for five of the twelve years he had been an adult. In 2008, he was convicted of second-degree possession/distribution of CDS within five hundred feet of a public housing facility, N.J.S.A. 2C:35-7.1, for which he was sentenced to a seven-year term of imprisonment.

It is not clear when the father was released from prison, but in April 2013, he was arrested and ultimately pled guilty to third-degree distribution of CDS, N.J.S.A. 2C:35-5(a)(1); third-degree distribution of cocaine, N.J.S.A. 2C:35-5(b)(3); third-degree hindering prosecution, N.J.S.A. 2C:29-3(a)(5); and third-degree theft by unlawful taking, N.J.S.A. 2C:20-3. For these convictions, he was sentenced to a concurrent four-year term of imprisonment. While in prison, he was charged with and pled guilty to third-degree hindering prosecution, N.J.S.A. 2C:29-3(b)(1), for which he was sentenced to a three-

4

year term of imprisonment. The father was released on all of the latter convictions in August 2016.

After the twins were born in June 2014, defendant was unable to visit with the children while incarcerated, due to the prison facility's policy on visitation. But while in prison, he completed two parenting classes, earned his GED, and took a college course in business management. However, a Division worker told the father the Division wanted him to submit to psychological and substance abuse evaluations, as well as random urine screens, and warned non-compliance would prevent reunification. After his release from prison, the father did submit to a psychological evaluation, but refused to submit to any drug testing and spurned five of the Division's referrals for a substance abuse evaluation.

In March 2016, the twins were placed in the home of their great aunt and uncle, where they have lived since. These relatives want to adopt the twins.

After his release from prison in August 2016, defendant was able to secure work. On appeal he argues the Division did not help him obtain suitable housing, but during his psychological evaluation, conducted in January 2017, defendant stated he did not need any services to provide a good

5

home for his children. Further, there is evidence the Division wanted to evaluate his home, but he declined to give the Division staff his address.

Psychologist James Loving, Psy.D., conducted the psychological evaluation. He testified defendant does not have any significant mental health problems. However, based upon defendant's criminal history, Loving opined defendant was "at extremely high risk" for recidivism. Because of this risk, defendant may be incarcerated in the future, which implicates his ability to parent the twins, not to mention provide them with a safe and stable home. During his psychological evaluation, the father asserted he had not used illicit drugs for a decade, but that claim could not be confirmed or at least investigated because, as stated, defendant evaded submitting to drug screens and a substance abuse evaluation.

Loving also conducted a bonding evaluation of the twins with defendant, as well as of the twins with their great aunt and uncle. During these evaluations, Loving noted the twins interacted with defendant in positive ways, but he found the twins' interaction with their resource parents to be much stronger. Loving determined the twins did not see defendant as their father or even as a primary person in their life. However, the twins "clearly show[ed] that they have close, familiar, comfortable, positive relationships with their

6

caregivers. And I would describe these attachments [to their caregivers] as being strong and positive . . . . [T]he best plan for the kids moving forward would be adoption by these caregivers."

The court found Loving's testimony credible. The father offered no contrary expert opinion to Loving's; in fact, he did not introduce any evidence at all. Following trial, the trial court issued a written opinion in which it addressed the four factors in N.J.S.A. 30:4C-15.1(a). The father raises various arguments, claiming there was insufficient evidence to support the court's conclusion the Division met all four prongs in this statute by clear and convincing evidence.

We recognize parents have a constitutionally protected right to enjoy a relationship with their children and to raise them without State interference. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008). However, this right is not absolute, as it is limited by the "State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447. The State has a strong public policy that favors placing children in a permanent and stable home. See In re Guardianship of K.H.O., 161 N.J. 337, 357-58 (1999).

7

A reviewing court should not disturb the factual findings of the trial court if they are supported by "'adequate, substantial and credible evidence' on the record." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). We defer to the trial court's credibility findings, unless the trial court's findings are "so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing J.T., 269 N.J. Super. at 188-89).

We have examined the father's arguments the Division failed to satisfy the four prongs of N.J.S.A. 30:4C-15.1(a). After perusing the record, we conclude these arguments are without sufficient merit to warrant discussion in a written opinion. See Rule 2:11-3(e)(1)(E). The court analyzed these prongs, and its findings are amply supported by substantial and credible evidence, mandating our deference. F.M., 211 N.J. at 448-49.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8